IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA SILVER, on behalf of himself and all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN-INFINITI LT, LLC; and NISSAN MOTOR ACCEPTANCE COMPANY, LLC,<br><br>Defendants. | Case No. _____<br><br><u>CLASS ACTION COMPLAINT</u><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Joshua Silver, through the undersigned attorneys, and on behalf of himself and all similarly situated individuals, brings this consumer class action against Defendants Nissan-Infiniti LT, LLC and Nissan Motor Acceptance Company, LLC (collectively, "Defendants" or "Nissan") pursuant to Federal Rule of Civil Procedure ("Rule") 23.

**PRELIMINARY STATEMENT**

1. This class action arises from Defendants' pervasive breach of motor vehicle lease extension agreements and deceptive business practices, which require lessees to pay thousands of dollars in excess of their vehicle's residual value and the negotiated price to purchase their vehicle at term-end.

2. Defendants offer consumers lease extension options through standard lease extension agreements entered into between the lessee and Nissan-Infiniti LT LLC, which are assigned to and serviced by Nissan Motor Acceptance Company LLC. Following the maturation and expiration of a lessee's initial lease agreement, Defendants utilize a standard set of contract provisions to enter into agreements to extend a lessee's lease term for a designated time period.

3.      Defendants' standard lease extension agreements contain express terms regarding, *inter alia*, the residual value of the vehicle, the length of the lease term, and the purchase price associated with a lessee's purchase option. Under the Purchase Option provision of Defendants' standard lease extension agreement, lessees are entitled to purchase their leased vehicle at the end of their lease extension term for a set price negotiated and agreed to by the parties at signing. This defined, fixed purchase amount ("Purchase Option price") is equal to the residual value of the leased vehicle at term-end, plus applicable fees and taxes.

4.      Consumers who enter into leasing arrangements with Defendants understand that the express provisions of their lease extension agreement will govern the parties' performance under the contract. Accordingly, lessees reasonably rely on the fixed Purchase Option price defined in their lease extension agreement to dictate the purchase amount they can expect to pay should they choose to exercise their purchase option rights under their extension agreement.

5.      At term-end, however, Defendants refuse to honor the purchase amount expressly defined by the Purchase Option provision of a lessee's extension agreement, and instead seek thousands of dollars in additional costs equal to the residual value of lessees' expired initial lease agreement in place of the subsequently negotiated purchase option price set forth in their operative extension agreement. Pursuant to this deceptive practice, Defendants render the Purchase Option provision – an otherwise valid and enforceable term of the lease extension agreement – an affirmative and material misrepresentation by Defendants at term-end.

6.      Leasing of motor vehicles is a preferred purchase option for thousands of consumers seeking an alternative to the traditional purchasing paradigm.[1] Whether drawn to the

---

[1] Aaron M. Kessler, *Auto Leasing Gains Popularity Among American Consumers*, THE NEW YORK TIMES, (Jan. 8, 2015), https://www.nytimes.com/2015/01/09/business/auto-leasing-gains-popularity-among-american-consumers.html (last visited Feb. 3, 2023).

prospect of more affordable monthly rates or guided by concerns of depreciating car values, each year millions of Americans choose to enter into a motor vehicle lease agreement with an automaker for the conditional use of a new or used vehicle, rather than making a complete, upfront purchase.

7.  To remain competitive, Defendants and other major automakers have developed and marketed attractive leasing and financing programs to appeal to the evolving needs of American auto consumers. These leasing programs enable consumers to enter into agreements to extend their lease terms after the maturation of their initial lease, subject to certain conditions.

8.  In 2020, over 30 percent of all new vehicles were leased,[2] evincing a fluctuating, but sustained market trend over several decades – a trend noted by consumers, automakers, and Congress alike. *See* 15 U.S.C. § 1601 ("Congress also finds that there has been a recent trend toward leasing automobiles and other durable goods for consumer use as an alternative to installment credit sales and that these leases have been offered without adequate cost disclosures.").

9.  Cognizant of the rising prevalence of lease agreements and their traditionally opaque nature, Congress codified the Consumer Leasing Act ("CLA"), Pub. L. No. 94-240, § 3, 90 Stat. 257 (1976), as an amendment to the Truth in Lending Act in 1976 to "provide consumers with meaningful information about the component and aggregate costs of consumer leases, so that they can make better informed choices between leases, and between leases and credit sales."[3] Shortly thereafter, several states, including New York, promulgated consumer protections of their own aimed at increasing transparency and clarity for consumers entering into complex lease

---

[2] *Percentage of newly-bought vehicles on lease in the United States from 1st quarter of 2017 to 3rd quarter of 2021*, STATISTA, (Dec. 2, 2022), https://www.statista.com/statistics/453122/share-of-new-vehicles-on-lease-usa (last visited Feb. 3, 2023).

[3] Thomas B. Hudson & Aline C. Ryan, *The New Reg m: Has the Board Made A Wrong Turn*?, 51 Bus. Law. 933, 934 (1996) (quoting S. REP. NO. 590, 94th Cong., 2d Sess. 2 (1976)).

contracts by requiring disclosure of key provisions. *Id*. at 936.

10. According to Nissan's public financial reports, Defendants issue over 65,000 lease agreements nationwide each year, valuing over $1.425 billion.[4] Approximately 20 percent of those lease agreements originated in the state of New York. *Id*.

11. A significant number of consumers who have lease agreements with Defendants then enter into extension agreements with Defendants, reasonably expecting the express terms of their contracts to govern Defendants' conduct under these extension agreements. However, at term-end, Defendants disregard these express provisions and force extension lessees to pay the residual value of their expired lease agreements, rather than the express Purchase Option price designated by the lease extension agreement – often grossly exceeding the then-present residual value of the vehicle.

12. Due to Nissan's nationwide business activity, Defendants' implementation of the Company's deceptive leasing practices resulted, and continues to result, in their knowing breach of thousands of consumer lease extension contracts in violation of federal and state statutes enacted to protect consumers from unfair business practices within the consumer leasing context.

13. As a result, Plaintiff and all similarly situated lessees ("Putative Class Members") have suffered harm in an amount equal to the undisclosed fees charged by Defendants in excess of the set Purchase Option price (plus contracted-for fees and taxes) at the end of the lease extension period.

14. Accordingly, Plaintiff, on behalf of himself and Putative Class Members who entered into lease extension agreements with Defendants and were damaged thereby, alleges breach of contract, and violation of the federal CLA, 15 U.S.C. § 1667 *et seq*. Additionally,

---

[4] GENERAL MOTORS COMPANY, Form S-1, August 18, 2010.

Plaintiff, on behalf of himself and a sub-class of New York extension lessees who have been damaged by Defendants' actions (the "New York Class"), alleges violations of the New York Motor Vehicle Licensing Retail Act ("MVLRA"), N.Y. Pers. Prop. Law § 337, and New York General Business Law (NY GBL) § 349(a).

15. Plaintiff and Putative Class Members seek statutory, actual, and compensatory damages, injunctive relief, and any other relief deemed appropriate by the Court.

## PARTIES

16. At all relevant times, Plaintiff Joshua Silver was and is an individual residing in New York and a party to a lease extension agreement entered into by Defendants. At all relevant times, Plaintiff and Putative Class Members were and are persons and motor vehicle lessees within the relevant definitions of the applicable statutes alleged herein.

17. At all relevant times, Defendant Nissan-Infiniti LT LLC ("Nissan-Infiniti") was and is incorporated in Delaware. At all relevant times, Defendant Nissan-Infiniti directed its business activities, including transacting motor vehicle lease extension contracts with lessees, to residents of New York, for pecuniary gain. Defendant Nissan-Infiniti's primary place of business is located at 990 West 190th Street in Torrance, California.

18. Defendant Nissan Motor Acceptance Corporation ("NMAC") was a limited liability company incorporated in California until on or about April 1, 2021. After that, NMAC became and still is a limited liability company incorporated in Delaware. At all relevant times, Defendant NMAC directed its business activities, including financing and transacting motor vehicle lease extension contracts with lessees on behalf of Nissan-Infiniti, to residents of New York, for pecuniary gain. NMAC's primary place of business is located at One Nissan Way in

Franklin, Tennessee. NMAC's sole member/owner is Nissan North America, Inc., a Delaware corporation with a principal place of business in Tennessee.

## JURISDICTION AND VENUE

19. This action is brought as a consumer class action pursuant to Rule 23.

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as Plaintiff and Putative Class Members allege claims arising under the laws of the United States and this Court has supplemental jurisdiction over Plaintiff's state law claims. This Court also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds a sum or value of $5,000,000, exclusive of interests and costs, involves a proposed class of at least one hundred members, and at least one member of the proposed class is a citizen of a different state than Defendants.

21. This Court may exercise personal jurisdiction over Defendants pursuant to New York's long-arm statute, New York C.P.L.R 302, as the claims alleged arise out of business transactions conducted in and purposefully directed to New York by Defendants, and from which Defendants sought and received pecuniary gain through the registration of business operations in New York.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because substantial acts and transactions giving rise to these claims and resulting in injuries and ascertainable loss occurred in this District. Furthermore, Defendants routinely operate and solicit business in this District, and their wrongful acts have impacted the general public of this District.

## FACTUAL ALLEGATIONS

*The Original Lease*

23. On July 1, 2019, Plaintiff Joshua Silver purchased a 2019 Nissan Murano through

6

a closed-end motor vehicle lease agreement for a term of 24 months ("Lease Agreement") with Freedom Nissan Inc., which was assigned to Nissan-Infiniti at execution and serviced by NMAC.

24. The Lease Agreement contains a provision outlining a lessee's right to purchase the leased vehicle after the maturation of the lease term and defines that Purchase Option price as equivalent to the residual value of the leased vehicle at term end. On July 1, 2021, the Lease Agreement reached maturation.

25. The Lease Agreement contained an integration clause providing:

> This Lease is the entire agreement and can only be changed by written agreement between the Lessee, Co-Lessee (if applicable) and Dealer, NILT, or any other assignee, if this Lease is assigned. There are no other written or verbal agreements.

***The Lease Extensions***

26. On December 1, 2021, Plaintiff entered into a Motor Vehicle Lease Extension Agreement ("December Extension Agreement") for a nine-month period ending on April 1, 2022. The December Extension Agreement stated that Plaintiff could exercise his Purchase Option at the end of the extended lease term for $20,635.01, plus the applicable fees and taxes.

27. On April 1, 2021, Plaintiff entered into the operative extension agreement ("April Extension Agreement") for a term of ten-months expiring on May 1, 2022. The April Extension Agreement states that Plaintiff could exercise his Purchase Option at the end of the extended lease term for the purchase price of $20,428.90, plus the applicable fees and taxes. A true and correct copy of the April Extension Agreement is attached hereto as Exhibit 1.

28. Plaintiff's April Extension Agreement constitutes a "consumer lease" because it was for a term of over four months, involved a total contractual obligation of less of $50,000.00, and was primarily used for personal, family, and household purposes.

29. Both extension agreements were versions of Defendants' standard form contracts issued for all extension agreements for terms over five months.

30. Plaintiff's extension agreements contained the following language: "Except as supplemented above, all other terms and conditions are governed by your Closed End Motor Vehicle Lease Agreement dated 7/1/2019."

31. Neither of Plaintiff's extension agreements contain an arbitration provision.

*The Lease Buyout*

32. Following the maturation of his April Extension Agreement, Plaintiff expressed interest in purchasing his leased vehicle.

33. On April 26, 2022, Nissan-Infiniti sent Plaintiff two emails containing two different quoted Purchase Option amounts – one reflecting a Purchase Option price of $22,490.00 (the residual value quoted in his expired lease agreement), and a second reflecting a Purchase Option Price of $23,979.97 (the residual value quoted in his expired lease agreement plus applicable sales tax). Nissan-Infiniti informed Plaintiff that the quoted prices would expire on April 30, 2022.

34. On April 28, 2022, Plaintiff received a third letter from Nissan-Infiniti acknowledging Plaintiff's request for a payoff amount for the purchase of his leased vehicle at term-end. This letter quoted a Purchase Option price of $24,279.96 (inclusive of applicable sales tax in the amount of $1,489.96 and a purchase option fee of $300.00). Nissan-Infiniti informed Plaintiff that the quoted price would expire on May 6, 2022.

35. As of the date of Plaintiff's initiation of his contracted-for purchase option, the April Extension Agreement and its express terms constituted the operative lease agreement between Plaintiff and Defendants.

36. The April Extension Agreement provided as follows:

**Purchase Option at the End of Lease Term**: You have an option to purchase the Vehicle at the end of the Lease Extension term for $20,428.90 and a Purchase Option Fee as disclosed on your lease contract. Please see your original Lease.

37. Consistent with the parties' intent and Plaintiff's understanding of the Purchase Option at contract execution, the Purchase Option price expressly stated in the April Extension Agreement was equal to the residual value amount expressed in a preceding section of the agreement. Plaintiff relied on this provision in executing the extension agreement and reasonably expected to pay that amount at term-end under the Purchase Option.

38. Defendants have refused to allow Plaintiff to exercise his purchase option for $20,428.90 plus applicable taxes and fees, despite the Company's express obligation to do so under the April Extension Agreement.

39. Additionally, Defendants' standard extension agreement contract for terms over five months provide:

> Since the total months of extension on your lease exceeds five (5) months, we include with this letter consumer leasing disclosures for the additional [(10)] month extension ("Lease Extension") as follows . . . .

40. Defendants state, and concede by so stating, that the April Extension Agreement entered into by Plaintiff, required new consumer leasing disclosures.

41. The April Extension Agreement also contains a "catch-all" provision which refers Plaintiff back to certain provisions in the Lease, but not the arbitration provision:

> **Other Important Terms**: Your Lease contains additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, inapplicable.

42. The April Extension Agreement was a renegotiation of Plaintiff's expired lease agreement, as defined by § 345 of the MVLRA, and required Defendants to issue new disclosures including a full set of term provisions.

43. The April Extension did not include a clear and unambiguous statement of all lease terms in a single document, and excluded an early termination provision, among others, in violation of § 337 of the MVLRA.

## CLASS ALLEGATIONS

44. Plaintiff brings this suit individually and on behalf of the following putative Classes of similarly situated individuals pursuant to Rules 23(b)(2) and (3).

   a. **Lessee Class**: All consumer lessees nationwide who entered into a lease extension agreement with Defendants or their affiliates for a five-month term or longer, who attempted to or did exercise their purchase option under their lease extension agreement at term-end during the six-year period preceding the filing of this suit.

   b. **NY Lessee Class**: All persons who entered into a lease extension agreement with Defendants in New York who attempted to or did exercise their purchase option under their lease extension agreement at term-end during the four-year period preceding the filing of this suit.

45. Excluded from the Classes are Defendants, their officers, employees, subsidiaries, affiliates, directors and members of their immediate families, and any government entity or judicial officers.

46. All prerequisites pursuant to Rule 23(a) are satisfied:

   a. **Numerosity**: The members of the Classes are so numerous that joinder of all members is impracticable. The Classes are comprised of vehicle lessees throughout the United States.

   b. **Commonality**: Common questions of law and fact exist as to all members of each respective Class. Common questions predominate over the questions affecting only individual Class Members, including but not limited to:

      i. Whether Defendants' extension lease agreement is a standardized form agreement;

      ii. Whether Defendants breached their lease extension agreements by charging lessees an amount in excess of their contracted for Purchase Option price at term-end;

    iii. Whether Defendants' failure to disclose all fees associated with the Purchase Option price of a lease vehicle constitutes a violation of the CLA;

    iv. Whether Defendant violated the CLA, 15 U.S.C. § 1667 et seq., by charging lessees, or causing lessees to be charged, fees in excess to those permitted by the express terms of the lease extension agreements;

    v. Whether Defendants' failure to disclose the requisite terms in their motor vehicle lease extension agreements executed in New York constitutes a violation of the MVLRA (NY Lessee Class);

    vi. Whether Defendants' pervasive misrepresentation of the Purchase Option provision, and/or deceptive business practice of charging lessees in New York fees in excess of their contracted for Purchase Option price at term-end constitute violations of the NY GBL (NY Lessee Class); and

    vii. Whether Plaintiff and putative Class Members were damaged as a result of Defendants' wrongful conduct.

c. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Classes as all members are similarly affected by Defendants' wrongful conduct. Plaintiff, like other members of the Classes, entered into a lease extension agreement with Defendants and was charged an amount in excess of the price set forth in the express Purchase Option provision in his agreement as a result of Defendants' company-wide leasing practices. Plaintiff seeks identical remedies and advances identical claims and legal theories to the members of the respective Classes.

    d. **Adequacy**: Plaintiff will fairly and adequately serve as a class representative on behalf of other similarly situated Class Members. Plaintiff has no interests that are antagonistic with other Class Members and avers a willingness to pursue this case in the shared interest of other members of the Classes. Counsel for Plaintiff and the putative Classes are appropriately suited to serve as class counsel based on prior federal class action experience in this District and elsewhere.

    e. **Superiority**: This suit is properly maintained as a class action because a class action is the superior available method for the fair and efficient adjudication of this controversy and joinder of all members is impracticable.

## CAUSES OF ACTION

### First Cause of Action
### Breach of Contract
(Plaintiff and the Lessee Class)

47. Plaintiff asserts and incorporates by reference all prior allegations set forth in this Complaint.

48. Plaintiff and the Lessee Class entered into a valid and binding contract with Defendants to extend the lease of their motor vehicles in exchange for adequate consideration.

49. Plaintiff and the Lessee Class performed all obligations required under the contract.

50. Defendants' standard lease extension agreement contained the following provision:

Purchase Option at End of Lease Term: You have an option to purchase the Vehicle at the end of the Lease Extension term for [Purchase Option price] and a Purchase Option Fee as disclosed on your lease contract. Please see your original Lease.

51. Defendants materially breached the contract entered into by Plaintiff and the Lessee Class by refusing to allow them to exercise their purchase option rights for the Purchase Option price negotiated and agreed to by the parties in their extension contract.

52. Defendants also misrepresented the purchase price required by lessees to exercise their purchase option rights under their extension contracts at the end of their lease term. Plaintiffs and the Lessee Class justifiably relied on these misrepresentations to their detriment. Had Plaintiff and the Lessee Class been aware of the falsity of Defendants' representations with respect to the Purchase Option provision and Purchase Option price, they would not have entered into the contracts or would have attempted to negotiate for different terms.

53. Plaintiff and the Lessee Class suffered actual damages as a result of Defendants' material breach.

## Second Cause of Action
### Violation of The Federal Consumer Leasing Act, 15 U.S.C. § 1667a and 12 C.F.R. § 213.4
(Plaintiff and the Lessee Class)

54. Plaintiff reasserts and incorporates by reference all prior allegations set forth in this Complaint.

55. Defendants are lessors as defined by 15 U.S.C. § 1667(3) by way of their pervasive engagement in motor vehicle lease transactions. Plaintiff and the Lessee Class are lessees under 15 U.S.C. § 1667(2) as natural persons who entered into consumer leases with Defendants as defined under 15 U.S.C. § 1667(1).

56. The standard lease extension agreement issued by Defendants and executed by Plaintiff and the Lessee Class is governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 213.4.

57. Defendants misrepresented and/or failed to disclose additional costs associated with lessees' exercise of their Purchase Option at term-end.

58. Defendants' misrepresentations and/or omissions were material to lessees' agreement to enter into lease extension agreements with Defendants.

59. Plaintiff and the Lessee Class relied on these material misrepresentations and/or omissions to their detriment when deciding to enter into lease agreements with Defendants.

60. Defendants' misrepresentations and/or omissions were the actual and proximate cause of the actual and statutory damages suffered by Plaintiff and the Lessee Class, for which they are entitled to recovery pursuant to 15 U.S.C. § 1640.

**Third Cause of Action**
**New York General Business Law § 349(a)**
(Plaintiff and the NY Lessee Class)

61. Plaintiff reasserts and incorporates by reference all prior allegations set forth in this Complaint.

62. Defendants are corporations engaged in business, trade, and/or commerce in the state of New York.

63. Defendants violated NY GBL § 349 by engaging in unfair and deceptive acts involving misrepresentations, omissions, and business practices likely to mislead consumers.

64. Further, a violation of MVLRA § 337 is a deceptive trade practice under NY GLB § 349.

65. Defendants' acts which violate NY GBL § 349 include, but are not limited to, the construction and implementation of deceptive motor vehicle lease extensions terms and provisions. Defendants caused information and marketing materials related to these deceptive lease provisions to be published, promoted, and disseminated in the state of New York.

66. Plaintiff and the NY Lessee Class relied upon Defendants' misrepresentations in deciding to enter into lease agreements with Defendants.

67. Defendants' pervasive misrepresentations of the Purchase Option terms of their lease extension agreements and deceptive business practice of charging lessees in New York fees in excess of their contracted-for Purchase Option price at term-end constitutes a violation of §

349(a) of the NY GBL. Defendants' acts were knowingly made in furtherance of unjustified pecuniary gain.

68. As a result of Defendants' conduct, Plaintiff and the NY Lessee Class were denied the full value of their benefits under their lease extension agreements and are entitled to monetary and injunctive relief.

**Fourth Cause of Action**
**New York Motor Vehicle Licensing Act, N.Y. Pers. Prop. Law § 337**
(Plaintiff and the NY Lessee Class)

69. Plaintiff asserts and incorporates by reference all prior allegations set forth in this Complaint.

70. Plaintiff and the NY Lessee Class entered into lease extension agreements exceeding five months, which constitute renegotiations and require full disclosures under N.Y. Pers. Prop. Law §§ 345, 337.

71. Defendants acknowledged, and conceded by the express terms of their agreements, that new consumer disclosures were required to lessees entering into extension agreements for a term exceeding five months.

72. Defendants failed to provide Plaintiff and the NY Lessee Class with the requisite disclosures in a single document reflecting all the agreements of the parties, in violation of N.Y. Pers. Prop. Law § 337.

73. Defendants failed to provide Plaintiff and the NY Lessee Class with all required disclosure provisions in violation of N.Y. Pers. Prop. Law § 337.

74. As a result of Defendants' violations, Plaintiff and the NY Lessee Class are entitled to actual and statutory damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the putative Classes, prays for the

following relief and judgment against Defendants:

A. An order certifying the Classes under the appropriate provisions of Rule 23 and appointing Plaintiff and his legal counsel to represent the Classes;

B. Any and all damages, including treble damages, as provided by law;

C. Any and all pre-judgment and post-judgment interest to the Classes as provided by law;

D. Injunctive relief requiring Defendants to end deceptive business practices related to their contractual obligations under lease extension agreements;

E. Attorneys' fees and costs; and

F. Such other relief deemed just and proper by the Court.

## JURY DEMAND

Plaintiff, individually and on behalf of all members of the proposed Classes, hereby demands a trial by jury on all issues so triable.

Dated: February 7, 2023

                                             Respectfully submitted,

                                       FREEDMAN NORMAND FRIEDLAND LLP

                                       */s/ Devin (Velvel) Freedman*
                                       Devin (Velvel) Freedman, Esq.
                                       Ivy T. Ngo (pro hac vice forthcoming)
                                       One SE 3rd Avenue, Suite 1240
                                       Miami, FL 33131
                                       Tel: (305) 753-3675
                                       Emails: vel@fnf.law
                                                       ingo@fnf.law

                                       Maya S. Jumper
                                       99 Park Ave., Suite 1910
                                       New York, NY 10016
                                       Telephone: (646) 970-7524
                                       Email: mjumper@fnf.law