```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/19/2024__

JOSHUA SILVER, on behalf of himself and all similarly situated individuals,

                Plaintiff,

-against-

NISSAN-INFINITI LT, LLC; and NISSAN MOTOR ACCEPTANCE COMPANY, LLC,

                Defendants.

23 Civ. 1019 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Joshua Silver, brings this putative consumer class action against Defendants, Nissan-Infiniti LT, LLC and Nissan Motor Acceptance Company, LLC (collectively, "Nissan"), alleging that by "refus[ing] to honor the purchase amount expressly defined" in his vehicle lease extension agreements, Nissan employed deceptive business practices and breached the terms of its agreements. Compl. ¶ 5, ECF No. 1; *see generally id.* Nissan moves to compel arbitration and stay the proceedings pursuant to the Federal Arbitration Act (the "FAA"), arguing that the dispute is governed by the arbitration clause contained in Silver's original lease agreement (the "Lease"). Mot., ECF No. 12; Def. Mem. at 1, ECF No. 12-1.

    For the reasons stated below, the motion to compel arbitration is GRANTED.

**BACKGROUND**

    I.    <u>The Lease and Lease Extension Agreements</u>

    On July 1, 2019, Silver entered into a twenty-four-month vehicle lease agreement with Nissan.[1] Lease, Roberts Decl. Ex. A, ECF No. 12-2 at 5.[2] On December 1, 2021, Silver and Nissan

---

[1] Silver entered into the lease agreement with Freedom Nissan, Inc., the Vermont car dealership from which he leased the vehicle. Freedom Nissan assigned the lease to Defendant Nissan-Infiniti LT LLC, and the lease was serviced by Defendant Nissan Motor Acceptance Company, LLC. Roberts Decl., ECF 12-2 ¶¶ 5–8. For purposes of this order, the Court will refer to Nissan as the party that entered into the lease-related agreements with Silver.

[2] Because the lease agreement does not contain page numbers, the order uses the ECF page numbers.

entered into a nine-month lease extension agreement.  Compl. ¶ 26.  And, a few months later, on April 1, 2022, Silver and Nissan entered into a second agreement that extended the lease another month, to May 1, 2022.  *Id.* ¶ 27; ECF No. 1-1 at 3.  The April 2022 agreement states that Silver has an option to purchase the vehicle at the end of the lease "for $20,426.90 and a Purchase Option Fee as disclosed" in the Lease.  ECF No. 1-1 at 3.

In April 2022, Silver sought to purchase the vehicle following the expiration of the second lease extension agreement.  *Id.* ¶ 27.  He alleges that Nissan refused to let him purchase the vehicle at the $20,426.90 price in the April 2022 extension agreement, instead quoting higher purchase prices based on the Lease.  *Id.* ¶¶ 33–34.  Silver claims that in doing so, Nissan breached the terms of the April 2022 extension agreement and violated federal and state consumer protection laws.  *Id.* ¶¶ 47–74.

II.  <u>The Lease Arbitration Clause</u>

The Lease is titled "Motor Vehicle Lease Agreement with Arbitration Clause."  Lease at 5.  In the signature section of the Lease, directly above where Silver signed the agreement as "lessee," the Lease contains the following warning, "NOTICE: THIS CONTRACT CONTAINS AN ARBITRATION CLAUSE. PLEASE SEE OTHER SIDE."  *Id.*  In addition, the agreement requires a separate signature in acknowledgement of the arbitration clause.  Directly above that signature line, the lease reads: "Notice Regarding Arbitration: By signing below, you acknowledge that this Lease contains an arbitration clause and that you have read it.  READ THE ARBITRATION CLAUSE IN SECTION 28 BEFORE SIGNING HERE."  *Id.*  The arbitration clause, in relevant part, states:

> Except as otherwise stated below, any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this vehicle, this Lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and

2

> not by a court action.  If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. THE CLAIM OR DISPUTE IS TO BE ARBITRATED BY A SINGLE ARBITRATOR ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ACTION. YOU EXPRESSLY WAIVE ANY RIGHT YOU MAY HAVE TO ARBITRATE A CLASS ACTION. . . .
>
> You retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, and we agree to reimburse your filing fees for such proceedings.  You and we retain any rights to self-help remedies, such as repossession. You also retain the right to seek individual injunctive relief in court.  Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit.  Any court having jurisdiction may enter judgment on the arbitrator's award.  This Arbitration Clause does not apply to any claim or dispute relating to excessive wear and use, including collection or payment disputes.  This Arbitration Clause shall survive any termination, payoff or transfer of this Lease.  If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.  If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

Lease at 6.

The lease extension agreements Silver entered into in December 2021 and April 2022 do not contain an arbitration clause or mention arbitration.  ECF No. 1-1 at 3.[3]  The April extension stipulates that "[e]xcept as supplemented above, all other terms and conditions are governed by your Closed End Motor Vehicle Lease Agreement dated 7/1/2019 [(the Lease)]." *Id.*

## DISCUSSION

I.  <u>Legal Standard</u>

The FAA provides that arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a "federal policy favoring

---

[3] The parties have only provided the April 2022 lease extension agreement.  However, Plaintiff alleges that "[b]oth extension agreements were versions of Defendants' standard form contracts issued for all extension agreements for terms over five months."  Compl. ¶ 29.

3

arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted).

Under the FAA, parties can petition a district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The district court must stay proceedings once it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *McMahan Sec. Co. v. Forum Cap. Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir. 1994)); *see* 9 U.S.C. § 3. The Court is required to "direct[] the parties to proceed to arbitration in accordance with the terms of the [arbitration] agreement[,]" provided that there is no issue regarding its formation or validity. 9 U.S.C. § 4; *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 246 (E.D.N.Y. 2016).

To determine whether parties have agreed to arbitrate a dispute, "courts consider two questions: (1) whether a valid agreement to arbitrate under the contract in question exists and (2) whether the particular dispute in question falls within the scope of that arbitration agreement." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 99 (S.D.N.Y. 2015). The initial question of whether a valid "agreement exists between the parties . . . is determined by state contract law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017).

The party compelling arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–102 (2d Cir. 2022). "This burden may be satisfied by the actual production of the arbitration agreement." *Roller v. Centronics Corp.*, No. 87 Civ. 5715, 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989).

If the Court finds that the parties entered into an arbitration agreement, it must then determine "whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002). Although courts in this Circuit previously began this analysis by "classify[ing] the particular [arbitration]

4

clause as either broad or narrow," *Keystone Food Holdings, Ltd. v. Tyson Foods, Inc.*, 492 F. Supp. 3d 134, 143 (S.D.N.Y. 2020) (citation omitted), "[c]ourts can no longer rely on broad arbitration clauses to presume arbitrability in the first instance." *Galanova v. Morgan Stanley Servs. Grp. Inc.*, No. 23 Civ. 183, 2023 WL 6198823, at *4 (S.D.N.Y. Sept. 22, 2023) (citing *Local Union 97 v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023)). Rather, courts must first turn to "ordinary principles of contract interpretation" to assess whether the "particular dispute is covered by the language to which the parties agreed." *Local Union 97*, 67 F.4th at 114. As such, "the presumption of arbitrability is a court's last, rather than first, resort" and is invoked "only where the parties' dispute concerns a valid and enforceable agreement to arbitrate that is ambiguous as to its scope." *Id.* at 113–14.

In deciding a motion to compel arbitration, the Court applies a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "The summary judgment standard requires a court to consider all relevant, admissible evidence . . . [and] draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (cleaned up).

II.   Analysis

Because Nissan has produced the arbitration agreement, *see* Lease, it has met its initial burden of "demonstrating that an agreement to arbitrate was made." *Zachman*, 49 F.4th at 101–02 (2d Cir. 2022); *Roller*, 1989 WL 71200, at *2.

Accordingly, Silver—as the party seeking to avoid arbitration—"bears the burden of showing [that] the agreement [is] inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010). Silver contends that the instant dispute is not subject to arbitration because (1) the April 2022 lease extension agreement, which he argues is the operative agreement, does not contain an arbitration clause; (2) if the Lease's terms apply, the parties' dispute falls within

a carveout to the Lease's arbitration clause; and (3) enforcement of the arbitration clause in this action would render the provision unconscionable.

### A. Application of the Lease's Arbitration Clause to the Lease Extension Agreements

Silver argues that the April 2022 lease extension agreement governs the parties' dispute and, because it does not contain an arbitration agreement, Nissan's motion to compel arbitration must fail. The Court disagrees. The Lease's arbitration agreement is incorporated by reference into the subsequent lease extension agreements.

"Under New York law, it is well established that contract terms and other agreements may be incorporated by cross-reference." *Zachman*, 49 F.4th at 104. Courts consider two factors in determining whether a document has been incorporated by reference: "(1) whether the allegedly incorporated document is expressly identified and so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt, and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract." *Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 279 (S.D.N.Y. 2022) (cleaned up).

The lease extension agreements expressly identify the Lease in stipulating that "[e]xcept as supplemented above, all other terms and conditions are governed by" the Lease. ECF No. 1-1 at 3. Such language clearly communicates the parties' intent to incorporate the Lease's terms unless the lease extension agreements explicitly provide to the contrary. Because the lease extension agreements are silent on the issue of dispute resolution and arbitration, the parties' agreement to arbitrate in the Lease is incorporated by reference into the lease extension agreements. *See Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 716 (2d Cir. 2017) (holding that contract incorporated arbitration provision by reference where the contract did "not contain an arbitration provision on its face," but did "reference secondary documents that . . . call for arbitration" (cleaned up)); *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002) (noting that

6

the Second Circuit has "specifically found that parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference"). Accordingly, even if the April 2022 lease extension agreement governs the instant dispute, the Lease's arbitration clause still applies.

### B.  The Excessive Wear and Use Carveout

The Court must next determine "whether the particular dispute in question falls within the scope of that arbitration agreement." *Spinelli*, 96 F. Supp. 3d. at 99. Silver argues that based on the plain language of the arbitration provision, "payment disputes"—like his—are beyond the scope of the arbitration agreement. Pl. Opp. at 17, ECF No. 25. He relies on a sentence in the Lease's arbitration agreement that reads, "[t]his Arbitration Clause does not apply to any claim or dispute relating to excessive wear and use, including collection or payment disputes." Lease at 6.

Evaluating the sentence in question and the Lease in its entirety, the Court finds that the carveout pertains solely to "collection and payment disputes" stemming from a vehicle's "excessive wear and use." *Id.* "Under the rule of the last antecedent, a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 335 (2d Cir. 2011) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)) (cleaned up); *cf. Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 781–82 (2d Cir. 2013) ("When there is no comma, . . . the subsequent modifier is ordinarily understood to apply only to its last antecedent."). Here, the carve-out sentence contains a comma after "excessive wear and use," indicating that the clause that follows ("including collection or payment disputes") is meant to modify the prior clause. Accordingly, the sentence clarifies that the arbitration agreement's exclusion of excessive wear and use disputes includes collection and payment disputes that arise from a vehicle's excessive wear or use.

This interpretation is supported by an evaluation of the Lease in its entirety. The Lease contains a comparatively lengthy section dedicated solely to excessive wear and use, which

precedes the arbitration provision in the three-page document and details a lessee's responsibilities for "all repairs . . . that are not the result of normal wear and use," inspection requirements, and Nissan's rights to charge lessees for any damage that is "concealed or obscured." Lease at 6. The Lease does not contain a standalone section on either collection or payment disputes. Nor does it use these words as terms of art in the way it does with "excessive wear and use." The prominence of the "Excessive Wear and Use" section supports reading the carve-out sentence as an unambiguous removal of excessive wear and use disputes from the binds of arbitration.

Based on the plain language of the agreement, Silver's dispute is not excluded from the arbitration agreement. To the contrary, Silver brings "contract, tort, [and] statut[ory]" claims against Nissan, Lease at 6, all which are explicitly "covered by the language to which the parties agreed," *Local Union 97*, 67 F.4th at 114.

### C. Unconscionability

Lastly, Silver argues that the arbitration agreement contained in the Lease is unconscionable and, therefore, unenforceable. Pl. Opp. at 19–20. Under New York law, a contract may be deemed unconscionable based on the "contract formation process and the alleged lack of meaningful choice" (procedural unconscionability) or the "content of the contract" (substantive unconscionability). *Simar Holding Corp. v. GSC*, 928 N.Y.S.2d 592, 595 (App. Div. 2011) (citation omitted).

Silver does not argue that the Lease is procedurally unconscionable.[4] Rather, he argues that it is substantively unconscionable. "Courts assessing the substantive unconscionability of an agreement consider whether one or more key terms are unreasonably favorable to one party," and

---

[4] This argument would likely fail, as the contract formation process as alleged in the complaint does not appear out of step with arbitration agreements that New York courts regularly uphold. *See, e.g.*, *Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (upholding arbitration agreement offered in a "take-or-leave-it" fashion); *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 Civ. 9905, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (declining to find arbitration provision unconscionable because plaintiff "has not provided any evidence that he could not obtain high-speed Internet service from another provider").

whether the contract "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 28 (2d Cir. 2019) (internal quotation marks and citations omitted). Silver contends that the Lease's arbitration agreement is substantively unconscionable because it is of an "'infinite' nature" and lacks a nexus to Silver's instant claim. Pl. Opp. at 19–20 (citing *Davitashvili v. Grubhub Inc.*, No. 20 Civ. 3000, 2023 WL 2537777, at *11 (S.D.N.Y. Mar. 16, 2023)).

The Court disagrees. Silver's contractual relationship with Nissan began with the Lease, which contains the arbitration agreement. The subsequent lease extension agreements and the parties' current dispute over the vehicle buyout price flow directly from that contractual relationship and concern the exact vehicle that was the subject of the Lease. The Court, therefore, finds that a sufficient nexus exists between Silver's legal claims and the contract containing the arbitration clause. Furthermore, the Court does not find it "grossly unreasonable in [] light of [today's] mores and business practices" for a lease extension agreement to incorporate the terms of a lease that originated the contractual relationship. *Baker*, 778 F. App'x at 27.

## CONCLUSION

For the reasons stated above, Nissan's motion to compel is GRANTED. This action is STAYED pending arbitration of Hastings's claim. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015). The parties are directed to file a status update within one week of the conclusion of arbitration. The Clerk of Court is directed to terminate the motion at ECF No. 12.

SO ORDERED.

Dated: March 19, 2024
      New York, New York

_____
ANALISA TORRES
United States District Judge